[No. 14384.  Department One.  March 15, 1918.]

GEORGE MILLER, *Appellant,* v. AMERICAN UNITARIAN ASSOCIATION, *Respondent.*[1]

COVENANTS—RESTRICTIONS—CONSTRUCTION— "PORCH" — ENTRANCE GATE.  Under the rule of strict construction against restrictive covenants, a building restriction against the erection of a "porch" closer than twenty-five feet to the sidewalk, is not violated by a covered entrance gate to church grounds; since a "porch" is always a part of the building.

SAME.  In such a case, even if the object of the covenant was to establish an open space affording a more extended view, the structure would not violate the covenant where the church was 53 feet back and the view remained unobstructed in all material respects.

Appeal from a judgment of the superior court for King county, Jurey, J., entered May 1, 1917, dismissing an action to abate and enjoin the maintenance of a building on certain premises, upon sustaining a demurrer to the complaint. Affirmed.

*Howard O. Durk* and *V. A. Montgomery,* for appellant.

*William H. Gorham,* for respondent.

[1]Reported in 171 Pac. 520.

FULLERTON, J.—The appellant and the American Unitarian Association are each the owners of lots in the University Park addition to the city of Seattle, their titles being deraigned from a common source under certain building restrictions declared to be covenants running with the land. The covenant is expressed in the deeds of each in the following terms:

"To Have and To Hold said premises . . . to said second party, his heirs and assigns forever, subject to the following covenants, limitations and restrictions: That said second party his heirs and assigns will not for a period of ·twenty years after date hereof, erect or maintain or suffer to be erected or maintained on said premises any flat, apartment, store, business, or manufacturing building, or to allow any building erected, either in whole or in part, to be used for business or manufacturing purposes; nor erect or maintain or cause or permit to be erected or maintained, or permit any building erected to be used for the sale or traffic in intoxicating liquors or for any other dangerous, vexatious or offensive purpose or establishment whatever. That neither said second party his heirs or assigns will erect or suffer to be erected on any part of said premises a dwelling of less value than $........ nor less than two stories high. Nor shall the outer or front line of any porch be constructed closer than 25 feet to the inner line of the sidewalk in front of said lot, nor any barn or stable, except as is appurtenant to a private residence, which stable or barn, if erected, shall stand at least 60 feet from the outer or street front; nor erect more than one residence on a single lot, nor erect any building across any lot; all the foregoing conditions, covenants agreements and restrictions shall be deemed covenants running with the land and binding upon said second party, his heirs, assigns and personal representatives."

The respondent erected a church building on the back of its lots, some fifty-three feet distant from the street line; but at the street entrance to the grounds, within three feet of the inner sidewalk line, it erected

a sort of open gate from which a wooden walk led to the church building. This structure was composed of two high concrete bases which supported four wooden columns on which rested a shingled roof presenting a square expanse on each side of about six feet. The structure occupied a horizontal plane surface twelve by six and one-half feet, the twelve foot extension fronting the street.

The appellant brought an action to abate and remove the structure and to enjoin its continuance. The respondent demurred on the ground that the complaint did not state facts sufficient to constitute a cause of action, which demurrer was sustained by the court. The appellant having elected to stand on its complaint, judgment on the demurrer was rendered against him dismissing the action. Error is assigned upon the sustaining of the demurrer and the dismissal of the action.

The question of law raised by the demurrer is whether the erection of the structure complained of violates any of the restrictions contained in the deed. The rule for the construction of this class of covenants has been announced by this court in the case of *Jones v. Williams,* 56 Wash. 588, 106 Pac. 166, as follows:

"It seems to be well settled law that words in a deed of conveyance restricting the use of the property by the grantee are to be construed strictly against the grantor and those claiming the benefit of such restrictions, and will not be extended beyond the clear meaning of the language so used."

No question is raised as to the right of the appellant to prosecute this character of action. The only issue involved is whether the gate erected by respondent comes within the covenant "Nor shall the outer or front line of any porch be constructed closer than 25 feet to the inner line of the sidewalk in front of said

lot." We think it clear that the modern acceptation and understanding as to the meaning of the term "porch" is that it is an attachment, either covered or uncovered, to a building, and commonly used for an entrance to the main building or as a lounging or decorative feature of it. The term is defined in the Century Dictionary as "an exterior appendage to a building, forming a covered approach or vestibule to a doorway or entrance, whether enclosed or unenclosed." Webster's International Dictionary defines the word as meaning "a covered entrance to a building, commonly inclosed in part and projecting out from the main wall with a separate roof; it may be large enough to serve as a covered walk."

In modern architecture, whatever it may have been in ancient times, a porch is always part of a building, and the weight of authority is that, where such an appendage extends beyond the main building into territory upon which there is a restriction against the erection of a dwelling house, the porch falls within the restriction. In the deed under which respondent holds, there is no mention of gates as prohibited structures; and even allowing that the structure in question might be a porch if it had been attached to the main building, the fact that it is nearly fifty feet distant from the church building utterly excludes any assumption that it is a porch. It is in the nature of a gate, though more exactly, it seems, a monument marking the entrance to the church property. However opinions may differ as to the necessity, utility, or beauty of such a structure, the position assumed by appellant would deprive an owner of property in that addition from marking the entrance to his grounds by raising ornamental posts or really beautiful statuary of the highest quality of art. Bearing in mind the rule that "covenants of this character are to be strictly

construed against the covenant, and there must be
shown to be a clear and plain violation of them to justi-
fy the interposition of a court of equity to restrain".
(*McDonald v. Spang,* 55 Misc. Rep. 332, 105 N. Y.
Supp. 617), we must hold that an entrance gate to the
grounds is not included within the restrictive covenant.

But the appellant carries his argument beyond spe-
cific and literal expressions in the covenant and con-
tends that the rule for construction of such covenants
is that "the intention of the parties as collected from
the entire conveyance and the circumstances attending
its execution" is a matter for consideration. In other
words, the contention is that the evident purpose of the
covenant was that no structure of any kind should oc-
cupy the lot within twenty-five feet of the inner side-
walk line. In support of this position the appellant
presents several decisions of other courts. In *Hyman
v. Tash* (N. J.), 71 Atl. 742, under a covenant forbid-
ding the erection of a dwelling within fifteen feet of the
street line, it was held that the erection of a store
building on the street line was prohibited. In *Sanders
v. Dixon,* 114 Mo. App. 229, 89 S. W. 577, where the
covenant was that not more than one dwelling should
be erected on each lot, it was held that a building for
dwelling purposes which was divided into four flats
was a violation of the restriction. In *Godfrey v. Hamp-
ton,* 148 Mo. App. 157, 127 S. W. 626, it was held that
a covenant against the erection of buildings "of the
character known as flats or tenement houses" forbade
the remodeling of a house for occupancy of two fam-
ilies, one on each floor. In *Buck v. Adams,* 45 N. J. Eq.
552, 17 Atl. 961, the covenant required the outer pro-
jections of every building to be set back at least thirty
feet from the street line, and this was construed as ex-
cluding the erection of any character of building with-
in that space. In *Bagnall v. Davies,* 140 Mass. 76, 2 N.

E. 786, the restriction was that no building should be erected within twenty feet of the street, and it was held that a piazza and dormer window which were parts of the building and projected into the forbidden space were violations of the covenant. The same construction was given in *Reardon v. Murphy,* 163 Mass. 501, 40 N. E. 854, where the piazza of a house was within the restricted area and the covenant provided that ''no building'' shall be placed at a less distance than twenty feet from the street line. As we gather the purport of these decisions, the only one which applies the restrictive covenant beyond the express terms employed is the case of *Hyman v. Tash, supra.* Inasmuch as that decision is in direct conflict with our own holding in *Jones v. Williams,* 56 Wash. 588, 106 Pac. 166, and with the weight of authority in other jurisdictions, we would not be inclined to follow it, even if it were based upon a state of facts corresponding to those of the instant case. A decision at odds with *Sanders v. Dixon, supra,* will be found in *Hutchinson v. Ulrich,* 145 Ill. 336, 34 N. E. 556, 21 L. R. A. 391, where a restriction that ''only a single dwelling is to be constructed or placed upon each fifty-foot lot'' was held not to prevent the building of a flat or apartment house to be occupied by more than one family. We think the construction adopted in the *Sanders* case is more in accord with reason than is the case which it opposes.

The decisions are practically unanimous in holding that steps leading to a building are not such a part of it as to be prohibited by a building line restriction. See: *Meaney v. Stork,* 80 N. J. Eq. 60, 83 Atl. 492; *Id.,* 81 N. J. Eq. 210, 86 Atl. 398; *Adams v. Howell,* 58 Misc. Rep. 435, 108 N. Y. Supp. 945; *Alderson v. Cutting,* 163 Cal. 503, 126 Pac. 157, Ann. Cas. 1914A 1; *Ogontz Land Imp. Co. v. Johnson,* 168 Pa. 178, 31 Atl. 1008; *Kirkpatrick v. Peshine,* 24 N. J. Eq. 206.

It seems to us that an entrance gate to grounds would be no more violative of a restriction against the erection of a building within a certain distance of the street line than would the placing of steps to the building within the limits of a restricted space.  Conceding that the object of the covenant in the case at bar was the establishment of an open space in front of all the buildings with the object of affording a more extended view and providing for lawns as an embellishment, such an intent of the covenant is not violated by the structure in question.  The space for the lawn still exists, and the view remains unobstructed in all material respects.  We think the reasoning of the court in *Meaney v. Stork, supra,* is pertinent here.  In that case steps had been built within a ten-foot space required by the deed to be kept "open and unencumbered, except that light, open fences, not more than six feet in height, may be built to enclose said strip as a courtyard, if so desired."  The court said:

"I incline to the opinion that the obvious purpose of the covenant was to have in front of each house a strip of land ten feet wide across which the vision of the neighbors would be unobstructed, and that the prohibition was against the erection of anything upon or within the said ten feet which would prevent free observation across it.  Read in this way, the restriction is entirely reasonable; the obvious purpose of it is served, and the owner of each lot is not deprived unreasonably of a perfectly proper use of his property.  Read in the broad way that the complainants insist it should be read, giving the most extreme meaning to each word of which each word is capable, the said strip of land would have to be left absolutely unimproved in any way, because anything placed upon it which nature had not placed there would then 'encumber it,' in the broadest sense of the word, and this is so entirely unreasonable that we discard it and search for the more reasonable construction."

The foregoing decision accords with appellant's theory that the obvious purpose of the covenant should be looked to, but reaches a conclusion that the invasion of the restricted area by structures which do not substantially affect the outlook is not prohibited. In the instant case, the church building is set back from the street more than double the required distance, affording abundance of outlook to the neighbors, which is broken only by an entrance gate at the street line, which interferes very little with the view, in fact less than would a common ornamental tree set at the same place. We are satisfied that the structure is a violation of neither the express words of the covenant nor of any apparent purpose deducible as the obvious intent of the covenant.

The judgment is affirmed.

ELLIS, C. J., PARKER, MAIN, and WEBSTER, JJ., concur.