CITY OF CLEVELAND, MISS. *v.* YOUNG, et al.

No. 41114 April 20, 1959 111 So. 2d 29

*Valentine & Valentine,* Cleveland, for appellant.

*Alexander, Feduccia & Alexander,* Cleveland, for appellee.

LEE, J.

This is an appeal by the City of Cleveland, Mississippi from a decree of the Chancery Court of Bolivar County which declined to enjoin J. L. Young, Jr. and others from constructing and maintaining a carport and storage room, allegedly in violation of the zoning ordinance of the City.

The cause originated in this way: Section 15 of the zoning ordinance provides in part as follows: ''No build-

ing or structure or part thereof shall be erected, reconstructed, altered, enlarged or moved without a permit from the City Clerk certifying that the proposed construction, reconstruction, moving, repair or use is in accordance with all of the provisions of this Zoning Ordinance.''

Section 5 of such ordinance provides as follows: ''*Residential Districts Area Regulations.* No building or structure shall be erected or enlarged so as to extend nearer than 15 feet to the right of way of any street, or in the case of a principal building, nearer than 4 feet to the side or rear lot line or 8 feet to the wall of another building.''

Permits were approved by the building committee, namely, the mayor, the city clerk, and the chairman of the committee. The members of this committee were Wattie Bishop, Mayor, Mrs. Dorothy N. Wilson, Clerk, and H. L. Sledge, Chairman. Proposed constructions or alterations were first submitted to a city employee, C. M. Brock. If he approved, they were then considered by the building committee. Upon their approval, the clerk issued a permit.

Abutting Lots 1 and 2 of the Virden Addition to the City are situated in an exclusive residential district. They front on Avery Street, are 66 feet east and west, and have a depth of 150 feet north and south. Lot 1 was owned by Luthyra and Bobby McArthur, and Lot 2, to the east, was owned by J. L. Young, Jr. and Wife, Eloise.

In February 1955, Pete and Charles Collins, the builders for the Youngs, without getting a permit from the City, laid the concrete foundation and floor for a carport and small room between the dwelling and the lot line. About three weeks later, as they started to raise the walls and lay the roof, Mrs. McArthur expressed concern about the matter and protested to the mayor. Bishop went to the scene, saw that the building was

only a few inches from the fence, supposedly on the line between the respective owners, warned those in charge that the ordinance was being violated, and, if the building was constructed, it would have to be torn down. He also gave written notice to Pete Collins, one of the builders, who in turn advised that he was going to finish the work and was not going to tear the addition down.

In the meantime, after the protest, on March 14, 1955, the Collins drew a sketch, showing that the addition extended to within two feet of the line, and submitted it to Brock, who approved it. Thereupon they delivered their sketch to Mrs. Wilson with a check for the fee, but they did not wait for the issuance of the permit. They read the zoning ordinance, and, from their interpretation, they decided they were not violating it. Although a protest had been lodged, they did not try again to get the permit issued. Their excuse for not doing so was that usually the committee approved the action of Brock, and that the addition was almost completed when the protest was made. Besides, there were other similar constructions in the City.

Brock, however, testified that the addition had already been started when the sketch was presented. When he saw the construction, the floor was laid and the wall was in the process of being raised, but the roof had not been put on. He reminded Charles Collins at the time that, if the building was attached to the home, it would have to be four feet from the property line; but if it was detached from the dwelling, the addition could extend to within one foot of the line.

The McArthur residence was eight and three-fourths feet west of the line between the lots. The west wall of the carport and storage room, as built by the Youngs on the west side of their lot, extended to within twenty-one inches of the line. The southwest corner post and another one in the center were twenty-seven and twenty-

eight and one-half inches, respectively, from the line; and the eavesdrop of the structure extended westward twelve inches from the wall and posts. The roof of the carport and the small room behind it was connected to the roof of the dwelling.

The chancellor was of the opinion that Brock, an employee of the City for about twenty years, had a general supervisory capacity, and, from what he said and did not say, led the Collins to believe that he had authority to grant them permission to build the addition in the manner in which it was constructed; that the addition was completed except for the roofing and paint job before objections were made; and that the addition was a garage and did not violate the zoning ordinance. He therefore dismissed the bill with prejudice and the City appealed.

The City contends that the addition was joined to, and became an integral part of, the principal building, namely, the dwelling, and that its erection was in direct violation of both the letter and spirit of Section 5 of the ordinance; that before constructing the addition, the appellees were required, under Section 15 thereof, to obtain a permit; that they did not do so; that Brock had no authority to issue a permit, but merely to make recommendations; that the clerk could issue a permit only after approval by the building committee; and that the committee never approved the same and a permit was not granted.

The appellees, on the contrary, do not contend that the zoning ordinance is invalid. They maintain simply that the addition in question, open on three sides and connected with the dwelling only by a flat roof, is not a principal building within the letter or spirit of the ordinance, but is a mere accessory building; and that, in addition, the City was estopped by the action of Brock in approving the sketch after protest had been made.

It is obvious that, if an area is enclosed partly by walls and partly by posts as a support for the roof, the resulting structure may properly be denominated a building. See 5 Words and Phrases, p. 882, where it is said: " 'Building', as used in a deed of land providing that the grantees should not erect on the land any house or other 'building' nearer the line of a certain street than a certain number of feet, should be construed to include a structure raised on posts, with a roof supported by pillars," citing Evans v. Mary A. Riddle Co., N. J., 43 A. 894, 895. See also p. 879 thereof, where it is said: "The term 'building,' as used in a restriction in a deed that no 'building' shall be placed at a less distance than 20 feet from the easterly line of a street, included a piazza about eight feet wide encircled by a railing and having a roof supported by posts attached to the house and extending along the entire front within the restricted limits," citing Reardon v. Murphy, 40 N. E. 854, 163 Mass. 501.

Whether construction conforms to an original design, or whether it is achieved by an alteration or addition, the result is the same, namely, one building.

██ ■ Under Section 5 of the ordinance, supra, it is contemplated that residences shall not be erected nearer than four feet of the line between the lots, thus leaving at least eight feet between such buildings. ██ ■ The decrease or prevention of fire hazards, the simplification of drainage difficulties and provision for light and air were some of the underlying reasons for the enactment of the ordinance. ■ If residences cannot be erected without compliance with these terms, neither can they be enlarged so as to decrease the distance.

 ■ When the addition was joined to the dwelling by placing it under the same roof, it became a part of the dwelling and thereby extended the same, that is, the main building, nearer the line than was permitted under the ordinance. One should not be permitted to

do indirectly what he cannot do directly. Since the addition became a part of the principal building, obviously it could not be termed an accessory building within the terms of the ordinance. The addition was, therefore, in violation of the ordinance.

Under Section 17 of the ordinance, the City authorities are vested with the right and power "to restrain, correct or abate such violation. * * *"

■■ The proof in this record showed that the clerk, on approval of the building committee, issued permits, and that the duty of Brock extended only to the matter of recommendations. Since he could not grant a permit, the City cannot be estopped in the enforcement of the ordinance merely because he approved the same. But, when he saw the construction, it had no roof on it; and he testified positively that he pointed out to the builders that, if the addition was joined to the building, it could not extend nearer than four feet to the line between the lots. This was not denied.

Under the facts in this case, the contention that the City was estopped to require conformity to the ordinance because of the action of Brock is manifestly untenable.

The decree of the trial court is therefore reversed and the cause is remanded for the grant of relief consistent and in accordance with the principles herein announced.

Reversed and remanded.

*McGehee, C. J.,* and *Hall, Holmes* and *Ethridge, JJ.,* concur.